BRADBURY, PLAINTIFF-APPELLEE, *v.* NEW YORK CENTRAL
RAILROAD COMPANY, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25753.   Decided March 8, 1962.

584

*Mr. Frank D. Celebrezze* and *Mr. Charles T. Wochna,* for plaintiff-appellee.

*Mr. John F. Dolan* and *Mr. F. M. Apicella,* for defendant-appellant.

(HUNSICKER and DOYLE, JJ., of the Ninth District, and HILDEBRANT, J., of the First District, sitting by designation in the Eighth District.)

HUNSICKER, P. J. A jury of six electors, in an action commenced in the Municipal Court of Cleveland, Ohio, by William Bradbury, returned a verdict of $7,500.00 in his favor against The New York Central Railroad Company upon a claim that he, Mr. Bradbury, while a passenger on such railroad, was wrongfully ejected therefrom. A judgment was rendered on the verdict, and from such judgment an appeal on questions of law was lodged in this court.

William Bradbury, a resident of St. Louis, Missouri, was, on July 11, 1958, traveling to his home city on a passenger train of the New York Central Railroad Company, herein called "railroad." He had entrained at either Syracuse or Buffalo in New York, with a passenger ticket to St. Louis and a bedroom pullman ticket for sleeping space on the train. Mr. Bradbury went to the club or lounge car and purchased a bottle of beer. After consuming this beverage, he ordered and consumed another bottle of beer. The lounge car porter claimed that Mr. Bradbury did not pay for these beverages and another beverage which he had ordered for another passenger. Mr. Bradbury stated that he had paid for all beverages purchased by him.

Mr. Bradbury claimed that he was at all times quiet and inoffensive in his conduct to the railroad personnel while persisting in his refusal to again pay the bill for beverages consumed by him. The members of the railroad crew who saw and heard Mr. Bradbury, as well as several members of the Cleveland Police Department and the railroad police department,

testified that Mr. Bradbury was loud, boisterous, profane, belligerent and abusive in his conduct toward the train conductor, lounge car porter, Cleveland police, and the railroad police. The train crew witnesses said that his conduct in the lounge car caused all the other passengers in that car to leave the lounge car.

Mr. Bradbury did not go to his sleeping quarters, although the conductor and police, when the train arrived in Cleveland, urged him to do so to sleep off the claimed intoxication. The train arrived in Cleveland about 2:30 a. m., Eastern Standard Time, July 12, 1958. Upon the refusal of Mr. Bradbury to cease his alleged disorderly conduct, two uniformed police officers (Mr. Bradbury says only one was in uniform), one a railroad policeman, the other a police officer of the city of Cleveland, escorted Mr. Bradbury from the train to the office of the railroad police in the station where the train had stopped at its usual stopping place. Mr. Bradbury was there given his hand luggage, and then he was taken in a police vehicle to the Cleveland Police Station and detained in a cell until later in the day of July 12, 1958, when he was released by the police of Cleveland.

Mr. Bradbury, before his being let out of jail, signed a release which, although admitted in evidence in part but not attached to the bill of exceptions, released all the police officers from liability for any claims Mr. Bradbury might assert against them. The testimony regarding such release is to the effect that Mr. Bradbury admitted his disorderly conduct concerning an incident on the New York Central Railroad, by reason of which he was detained in a jail cell for a period of time.

Mr. Bradbury, upon being released from jail, proceeded by airplane to St. Louis, incurring thereby certain additional expense. Although Mr. Bradbury was not given at Cleveland, when leaving the train, a refund on his ticket, he nevertheless did receive and accept such refund later when it was sent by the railroad to his home address.

The railroad insists that the judgment entered herein should be reversed, and assigns as reasons therefor ten grounds of claimed prejudicial error committed by the trial court. We shall pass on the claimed errors in the order set out in the brief of the appellant railroad.

The railroad, after the call day of the case as fixed by the Municipal Court of Cleveland, by rule duly enacted, and three days before the trial, requested, by motion, a jury of twelve electors. This motion, and a previous request, by letter, for such a jury, filed out of rule, was denied. A jury of six electors was impaneled to try the issue. This jury was selected and seated according to court rule 21 of the civil branch of the court and Section 1901.24, Revised Code. The trial court committed no abuse of discretion in denying the request for a jury of twelve electors, which request was not in compliance with the court rule.

One juror, who had previously been guilty of two felonies, did not disclose such fact on his voir dire. He was not asked any question relative to convictions for offenses. Whether he had all the qualifications of a lawful juror is not in issue here; and, on the assumption that he was properly selected and drawn by the jury commissioners for service, the failure to volunteer prior convictions of criminal offenses is not prejudicial to the rights of the appellant railroad. A refusal to grant a new trial, on the later discovery of these facts respecting a juror, is not error on the part of the trial court.

The appellant railroad requested the trial court to give a written instruction to the jury before oral argument as follows:

"If you find from the evidence that the police officers ejected the plaintiff, William Bradbury, from defendant's train while acting in their official capacity as police officers commissioned by the State of Ohio, even though they may have been acting at the request of the defendant's employees, then you cannot hold the defendant responsible or liable for such action of the police officers, whether or not such action was proper."

The instruction does not follow the full rule adopted in *New York, Chicago & St. Louis Rd. Co.* v. *Fieback*, 87 Ohio St., 254, and *Darden* v. *Louisville & Nashville Rd. Co.*, 171 Ohio St., 63.

The police officers, who were in full uniform (Mr. Bradbury said one was in plain clothes) testified they escorted Mr. Bradbury from the lounge car after listening to his profane and abusive language, and after Mr. Bradbury refused to go to his sleeping quarters. Mr. Bradbury said he was ejected for failure to pay a bar bill.

In refusing to give the requested charge, the trial court did

not commit error prejudicial to the substantial rights of the appellant.

Under Section 4873.24, Revised Code, a conductor may eject a passenger of a railroad train for certain conduct committed while riding on the train. Before removing such passenger, the conductor shall tender to the passenger such proportion of the fare he paid as the distance he then is from the place to which he paid fare bears to the whole distance for which his fare is paid.

The trial court gave, over the objection of the appellant railroad, an instruction concerning the duty of the conductor before ejecting a passenger who was guilty of one of the acts of misconduct set out in the statute. This instruction was prejudicially erroneous under the state of the record before us. The conductor did not eject or order Mr. Bradbury ejected from the train; he did call the attention of the officers to Mr. Bradbury, and such officers escorted him from the train. In addition, Mr. Bradbury received and accepted the amount of unearned train and pullman fare which was due him for the trip from Cleveland, Ohio, to St. Louis, Missouri.

The trial court, at the request of Mr. Bradbury, gave a written instruction concerning damages which permitted the jury to consider elements of claimed injuries, mental and physical, which Mr. Bradbury himself denied having.

There was no evidence of physical injury, humiliation or loss of compensation because of delay in getting to St. Louis. Mr. Bradbury did say he was worried about his delay and incarceration, although he had been subjected to police action in other previous matters. The giving of this requested instruction on damages for which there was no evidence was clearly prejudicial error on the part of the trial court toward the appellant railroad.

The claim is made that requested instruction No. 10 was prejudicially erroneous. Under all the circumstances herein, we do not find it so.

The trial court gave a lengthy requested instruction concerning the testimony of witnesses called by the railroad company, and the need to question the testimony as given by the railroad employees because of their manner of testifying, whether they testified from fear of losing their employment,

or from a desire to please their employer, or from a desire to avoid censure, or from fear of offending their employer. There is nothing in the evidence which even hints at such matters on the part of any witness employee of the railroad.

The credibility of witnesses is of immense concern to the jury, and is subject to inquiry on behalf of counsel; but where there is no evidence adduced which in any degree points a finger of suspicion at the witness and his testimony, we believe it wrong to single out in an instruction such witness, and others in his class, in a manner which can only tend to excite prejudice against the side for whom such witnesses testify.

To pick out such witnesses and call on the jury to question their testimony without any foundation for such emphasis, was highly prejudicial to the substantial rights of the appellant railroad.

"4. It is not the province of the court, to classify witnesses, and give to the jury what the experience of the courts may be in respect to such a class, but their credibility should be left to the jury, under all the competent facts and circumstances of the case before it." *State* v. *Tuttle*, 67 Ohio St., 441.

The trial judge in his instructions made comment on the evidence by saying: "As I recall the evidence, I haven't heard any testimony here as to the fact that Mr. Bradbury was arrested by anybody that testified." Mr. Bradbury said he was arrested by two police officers, one of whom was in uniform. The records officer from the police bureau, in reading from the waiver which Mr. Bradbury signed, stated that such waiver showed an arrest had taken place.

The trial court, further commenting on this waiver, said "In regard to this waiver, I wish to point out that Mr. Bradbury was never formally charged with disorderly conduct, that he never appeared in court, nor did he plead one way or the other in front of a judge."

This comment concerning arrest, formal charge, and appearance in court, was highly prejudicial. It is not necessary that one ejected from a passenger train be formally tried and found guilty of the conduct which led to his expulsion from such conveyance.

Offensive conduct, as set out in the statute, justifies the act of the railroad employees without the necessity for a conviction

in a court of law. If Mr. Bradbury did engage in disorderly conduct, then the railroad had a perfect right to remove him from its passenger train, whether or not later formal court action against Mr. Bradbury was prosecuted by the railroad.

A statement by a trial court in its instructions that is given argumentatively so as to give the jury the conclusion of the trial court is not proper. *Morgan* v. *State*, 48 Ohio St., 371; *Ribarin* v. *Kessler*, 78 Ohio App., 289; 39 Ohio Jurisprudence, Trial, Section 295, and authorities there cited.

The trial court stated to the jury that the railroad was an insurer of the luggage of Mr. Bradbury, and consequently was liable for any loss he may have sustained by reason of damage to such luggage. This luggage consisted of a suitcase, which Mr. Bradbury carried to the train and gave to a porter to place in his bedroom. This suitcase was returned to him at Cleveland, in an alleged damaged condition. The porter testified that he took the suitcase out of the bedroom and returned it to Mr. Bradbury. The amount of the claimed damage was less than $10.00.

Where hand luggage is carried onto a train and off of a train by the porter, such hand luggage being placed in the sleeping space assigned to the passenger, the railroad is not an insurer of such hand luggage, but is liable only for its negligence in the premises. See: *Bonser* v. *Pullman Co.*, 2 Ohio App., 35; *Pennsylvania Co.* v. *Miller & Co.*, 35 Ohio St., 541, 32 A. L. R. (2d), 692, Sec. 38; 10 American Jurisprudence, Carriers, Sec. 1770.

The instruction that the railroad was an insurer of the hand luggage, in a situation as we have herein, was prejudicial error.

The verdict in this case was for $7,500.00; yet Mr. Bradbury testified that: he was not physically injured; his credit was not impaired; none of his friends knew of the occurrence; he worried some about the matter; he was delayed several hours in getting to his home; was in jail about 10 hours before being released; he lost no wages or profit from any business as a result of the occurrence; and his out-of-pocket expense, including damage to his suitcase, was less than $50.00.

In the unanimous view of this court, the verdict in the amount rendered as compensatory damage, there being no punitive damage claim submitted to the jury, was excessive. The

verdict as given by this jury bears no relation to the amount of damages established by the evidence. If for no other reason, the judgment in this case should be set aside as being unconscionable. The verdict here appears to have been the result of passion and prejudice, and hence must be set aside.

It is very apparent from what has heretofore been said that this court is of the unanimous conclusion that the judgment rendered on the verdict is against the manifest weight of the evidence.

We consider now the question as to the liability of the railroad based on the assignment of error that the trial court incorrectly charged the jury as to the liability of the railroad for the action of the police in escorting Mr. Bradbury from the passenger train.

It must be noted again that Mr. Bradbury said he had no particular conversation with the railroad conductor at all on the night in question herein. He did say that two police officers escorted him from the train because he refused to pay a bill for beverages which he did not owe. He testified that he signed a release to the Cleveland police and to the policeman on the New York Central, one Woodrow Sims.

There is no testimony of any kind which even indicates that the conductor, stationmaster, or other official, ordered Mr. Bradbury from the train. The testimony is that everyone tried to get Mr. Bradbury to pay the bar bill, then go to his bedroom and go to sleep. There is thus no ratification of any acts of the police officers.

As to the officers, to whom the waiver or release was given, they asked (according to Mr. Bradbury) that he pay the disputed bar bill, and, when he refused, they escorted him from the train. The conductor had previously left the station; the stationmaster had walked out of the lounge car before the ejectment. The acts of the officers were not then committed by direction of the railroad conductor or the stationmaster. The act of ejection was not ratified or approved by any of the railroad personnel, except officer Sims, who was a beneficiary under the release signed by Mr. Bradbury.

Under such a state of facts, the law of this state is clear, having first been pronounced in the case of *New York, Chicago & St. Louis Rd. Co.* v. *Fieback*, 87 Ohio St., 254, wherein the court said, at pages 264 and 265:

"* * * So that, although he was appointed at the request of the railroad company and although his salary was paid by it, he was in fact, at the time of the plaintiff's injury, a public officer; and by the express terms of Section 3428, Revised Statutes (Section 9151, General Code), the railroad company would not be liable for his acts if a municipal corporation would not be liable. Police officers, by whomever appointed or elected are generally regarded as public or state officers deriving their authority from the sovereignty, for the purpose of enforcing the observance of the law; and for their malfeasance, misfeasance or nonfeasance in office the city is not responsible. 20 Am. & Eng. Ency. Law (2 ed.), 1204. But where the act complained of is outside of the public duties of a policeman, and were authorized or ratified by the corporation, the latter would be liable. It follows, therefore, that the only competent issue tendered by the defendant in error in his petition below, is whether the act of the policeman was outside of his public functions and was authorized by the railroad company."

The rule thus pronounced has been reaffirmed in the case of *Darden* v. *Louisville & Nashville Rd. Co.*, 171 Ohio St., 63, where, at page 64, the court said:

"* * * The fact that the police officers were acting in the interest of their employer, the defendant railroad, or at its request or authorization did not render their acts any the less official.

"A railroad company is not liable for the wrongful acts of such police officers while acting by virtue of their office, unless such wrongful acts occurred in the performance of an act which was *outside* the public duties of such a police officer and which was authorized or ratified by such company."

We have, then, a situation herein where there was an overwhelming amount of credible evidence to show that the police officers did not eject Mr. Bradbury because of failure to pay a bar bill, as Mr. Bradbury said, but because of the disorderly conduct committed by Mr. Bradbury—not only in front of the officers but also in front of passengers and train crew.

The failure of the trial court to properly charge on the subject of nonliability for the acts of the police officers, including the railroad police, constituted error prejudicial to the substantial rights of the appellant railroad..

592

A careful reading of this record convinces this court beyond all doubt as to the reason why Mr. Bradbury was ejected from the passenger train by the police officers. Reasonable minds can come to but one conclusion from reading this record, which is that, because of disorderly conduct on the part of Mr. Bradbury, police officers ejected him from the passenger train.

For this act the railroad is not liable. The judgment is thus contrary to law, and must be reversed and final judgment rendered in behalf of the appellant railroad.

Judgment reversed, and final judgment entered for the appellant.

DOYLE and HILDEBRANT, JJ., concur.